**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Steven Fred and Vanessa Fred, Plaintiffs, <br><br> v. <br><br> American Honda Motor Co., Inc., Defendant. | Case No. 2:25-cv-17979-JKS-JRA <br> PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

By: Tyrone Blackburn, Esq.

# TABLE OF CONTENTS

Preliminary Statement
Statement Of Facts
Legal Standard
Argument
    I.    Plaintiffs Adequately Plead the Existence of a Moonroof Defect
    II.    Plaintiffs Adequately Allege Ahm's Pre-Sale Knowledge of the Defect
    III.    AHM Had a Duty to Disclose the Known Safety Defect
    IV.    The Express Warranty Claim Survives Both The Design/Manufacturing Distinction and The Mileage Limitation
    V.    The Implied Warranty Claim Is Viable Despite the Durational Limitation and Continued Vehicle Use
    VI.    The Negligence Claim Adequately Alleges Both Defect Causation and Cognizable Injury
    VII.    The Nied Claim Satisfies New Jersey's Requirements as To Steven Fred
    VIII.    The IIED Claim Adequately Alleges Extreme and Outrageous Conduct and Severe Emotional Distress
    IX.    The MMWA Claim and Punitive Damages are Adequately Pleaded
    X.    Equitable And Injunctive Relief Is Appropriate and Plaintiffs Have Standing
Request For Alternative Relief: Leave to Amend
Conclusion

# TABLE OF AUTHORITIES

**CASES**

- *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)
- *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)
- *Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007)
- *Block v. Jaguar Land Rover N. Am., LLC*, No. 22-1544 (3d Cir. June 1, 2023)
- *Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019)
- *Diaz v. FCA US LLC*, No. 24-1197 (3d Cir. Apr. 15, 2025)
- *F.D.I.C. v. Bathgate*, 27 F.3d 850 (3d Cir. 1994)
- *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94 (3d Cir. 2013)
- *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367 (3d Cir. 1986)
- *Kanter v. Barella*, 489 F.3d 170 (3d Cir. 2007)
- *Kuhar v. Petzl Co.*, No. 19-3900 (3d Cir. Apr. 13, 2022)
- *Argabright v. Rheem Manufacturing Co.*, 201 F. Supp. 3d 578 (D.N.J. 2016)
- *Ballou v. Bayerische Motoren Werke Aktiengesellschaft*, No. 2:20-cv-04817 (D.N.J. Nov. 16, 2023)
- *Bullard v. Jaguar Land Rover Auto. PLC*, No. 2:22-cv-00660 (D.N.J. Mar. 16, 2023)
- *Cohen v. Subaru of Am., Inc.*, No. 2:18-cv-15261 (D.N.J. Sept. 8, 2022)
- *Davis v. BMW of N. Am., LLC*, No. 2:20-cv-11876 (D.N.J. Oct. 26, 2022)
- *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505 (D.N.J. 2008)
- *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, No. 2:20-cv-14464 (D.N.J. Nov. 19, 2021)
- *Granillo v. FCA US LLC*, No. 2:16-cv-02064 (D.N.J. May 22, 2017)
- *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373 (D.N.J. 2014)
- *Gujral v. BMW of N. Am., LLC*, No. 2:19-cv-19650 (D.N.J. Oct. 26, 2022)

- *Hardy v. Volkswagen Grp. of Am., Inc.*, No. 2:23-cv-04054 (D.N.J. Feb. 26, 2025)
- *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. No. II*, No. 2:03-cv-00302 (D.N.J. June 27, 2008)
- *In re Philips/Magnavox Television Litig.*, No. 2:08-cv-01970 (D.N.J. May 21, 2010)
- *Jackson v. Paterson Police Dep't*, 804 F. Supp. 3d 469 (D.N.J. 2025)
- *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 2:17-cv-12789 (D.N.J. Nov. 29, 2018)
- *Love v. Rancocas Hosp.*, 374 F. Supp. 2d 425 (D.N.J. 2005)
- *Ludwig v. FCA US LLC*, No. 3:24-cv-08906 (D.N.J. Jan. 6, 2025)
- *Neuss v. Rubi Rose, LLC*, No. 1:16-cv-05617 (D.N.J. Aug. 31, 2017)
- *Paolucci v. FCA US LLC*, No. 3:23-cv-14027 (D.N.J. Mar. 12, 2024)
- *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020)
- *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856 (D.N.J. 2020)
- *Rose v. Ferrari N. Am., Inc.*, No. 2:22-cv-07370 (D.N.J. Jan. 12, 2024)
- *Russo v. Thor Indus., Inc.*, No. 1:18-cv-12698 (D.N.J. June 30, 2020)
- *Schechter v. Hyundai Motor Am.*, No. 2:18-cv-10278 (D.N.J. Jan. 10, 2019)
- *Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1531-WHW-CLW (D.N.J. Jan. 24, 2014)
- *Smith v. Exxon Mobil Corp.*, 374 F. Supp. 2d 406 (D.N.J. 2005)
- *Snowdy v. Mercedes-Benz USA, LLC*, No. 2:23-cv-04054 (D.N.J. Feb. 29, 2024)
- *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 2:22-cv-00588 (D.N.J. Aug. 3, 2023)
- *Wesley v. Samsung Elecs. Am., Inc.*, No. 2:20-cv-18629 (D.N.J. July 20, 2022)
- *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001)
- *Collins v. Uniroyal, Inc.*, 64 N.J. 260, 315 A.2d 16 (1974)
- *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960)
- *Myrlak v. Port Authority of New York and New Jersey*, 157 N.J. 84, 723 A.2d 45 (1999)
- *Sun Chemical Corp. v. Fike Corp.*, 243 N.J. 319 (2020)
- *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992)
- *BCR Carp. LLC v. FCA US LLC*, No. 24-3202 (3d Cir. Oct. 3, 2025)
- *Tappana v. American Honda Motor Co., Inc.*, No. 2:21-cv-09046 (C.D. Cal. July 5, 2022)

**STATUTES**
- 15 U.S.C. § 2308(a) (Magnuson-Moss Warranty Act – Prohibition on Implied Warranty Disclaimer)
- 15 U.S.C. § 2310(d) (Magnuson-Moss Warranty Act – Civil Action)
- N.J.S.A. 12A:2-302 (Uniform Commercial Code – Unconscionable Contract or Clause)
- N.J.S.A. 12A:2-314 (Uniform Commercial Code – Implied Warranty of Merchantability)
- N.J.S.A. 12A:2-719(3) (Uniform Commercial Code – Limitation on Consequential Damages)
- N.J.S.A. 2A:15-5.9 (New Jersey Punitive Damages Act)
- N.J.S.A. 56:8-1 *et seq.* (New Jersey Consumer Fraud Act)

**RULES**
- Fed. R. Civ. P. 8(a)
- Fed. R. Civ. P. 9(b)
- Fed. R. Civ. P. 12(b)(6)
- Fed. R. Civ. P. 15(a)(2)

## PRELIMINARY STATEMENT

Plaintiffs Steven and Vanessa Fred purchased a 2023 Acura MDX—a premium luxury SUV—trusting that its manufacturer, American Honda Motor Co., Inc. ("AHM"), had built a vehicle safe for its intended purpose. On July 17, 2025, while Steven Fred was driving, the vehicle's panoramic moonroof spontaneously and explosively shattered without any external impact, raining thousands of glass fragments into the cabin while the vehicle was in motion. This is not an isolated incident. Spontaneous sunroof and moonroof explosions in Honda and Acura vehicles have been documented in thousands of NHTSA complaints, multiple class action lawsuits, media investigations, and technical literature going back decades.

AHM now asks this Court to dismiss every claim in the Complaint on ten separate grounds. Each argument fails. AHM's motion fundamentally asks this Court to resolve contested factual questions at the pleading stage—precisely what Rule 12(b)(6) forbids. Taking all well-pleaded allegations as true and drawing all reasonable inferences in Plaintiffs' favor, the Complaint states plausible claims for relief on every count.

Notably, when Honda raised nearly identical arguments in *Tappana v. American Honda Motor Co., Inc.*, No. 2:21-cv-09046 (C.D. Cal.), the court denied Honda's motion to dismiss. While *Tappana* is not binding on this Court, it is highly persuasive as the only reported decision addressing Honda's liability for the identical spontaneous sunroof shattering defect.

## STATEMENT OF FACTS

On July 17, 2025, Plaintiff Steven Fred was operating the family's 2023 Acura MDX (VIN 5J8YE1H48PL013686) when the panoramic moonroof spontaneously exploded. There was no external impact. The explosion caused shattered tempered glass to rain into the vehicle cabin, creating an immediate safety hazard while the vehicle was in motion. The Freds purchased the vehicle new, relying on AHM's representations about the quality and safety of the Acura MDX. AHM warranted the vehicle under its New Vehicle Limited Warranty ("NVLW"), covering defects in "material or workmanship" for 4 years or 50,000 miles.

Following the incident, the Freds contacted Acura Client Relations and their local dealership. A service manager confirmed that this type of spontaneous moonroof shattering had been reported on other vehicles—evidencing a known and recurring pattern.

The phenomenon of spontaneous sunroof glass shattering in Honda and Acura vehicles is extensively documented. NHTSA's own investigation (EA14-002) found that "spontaneous sunroof glass shattering is not an uncommon occurrence" with "more than 4,000 complaints of such occurrences" reported across 13 manufacturers, with Honda specifically included in that investigation. In November 2021, a class action was filed—*Tappana v. American Honda Motor Co., Inc.*, No. 2:21-cv-09046 (C.D. Cal.)—alleging an identical defect in 2015-2022 Honda and Acura vehicles. In July 2022, the Central District of California denied Honda's motion to dismiss nearly all claims in that case, finding that the plaintiffs adequately identified the defect and Honda's knowledge of it. Since at least 1995, over 800 complaints of exploding sunroofs in Honda vehicles alone were reported to NHTSA. AHM has also issued Technical Service Bulletins for moonroof seal deformation affecting 2020-2024 RDX and 2022-2024 MDX vehicles, and a 2025 TSB addressing moonroof noise issues for 2022-2025 MDX models.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). A complaint need only contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), "plausibility" does not require probability—only enough factual content to allow the Court to draw a reasonable inference that the defendant is liable.

Rule 9(b)'s heightened pleading standard for fraud requires that the "circumstances" of fraud be stated with particularity, but that standard "may be relaxed when information is 'peculiarly within the defendant's knowledge.'" *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994).

## ARGUMENT
### I. PLAINTIFFS ADEQUATELY PLEAD THE EXISTENCE OF A MOONROOF DEFECT

AHM argues that Plaintiffs fail to identify a specific defect in the moonroof, instead speculating about various possible causes. This argument misapplies the pleading standard as courts in this District have articulated it.

Courts in this District recognize that "plaintiffs are not necessarily expected to plead the mechanical details of a defect to state a claim." *Wesley v. Samsung Elecs. Am., Inc.*, No. 2:20-cv-18629 (D.N.J. July 20, 2022). The level of specificity required "correlates directly to the complexity of the machinery in question." *Id.* The moonroof is a relatively straightforward component: tempered soda-lime glass installed in a vehicle roof opening. The Complaint identifies the defect manifestation—spontaneous explosive shattering without external impact—and provides reasonable technical explanations grounded in established glass science, including NiS inclusions, manufacturing impurities, inadequate quality control, and defects in the tempering process. Glass technology literature confirms that NiS inclusions are microscopic impurities that form during the manufacturing process and remain dormant before causing catastrophic failure "with no warning and no external cause." This is more than sufficient at the pleading stage.

AHM relies on the 2023 version of *Wesley v. Samsung Elecs. Am., Inc.*, 2023 WL 3496024 (D.N.J. May 17, 2023), and *Sweeny v. Toyota Motor Sales, U.S.A., Inc.*, 2023 WL 2628697 (C.D. Cal. Feb. 9, 2023), for the proposition that the Complaint's reference to multiple potential causes is fatal to the defect allegation. Both cases are distinguishable. In the 2023 *Wesley* decision, the court dismissed a defect allegation involving a consumer electronics remote control that offered wholly inconsistent theories of failure with no unifying mechanism—the plaintiff could not identify a single physical phenomenon connecting the alleged theories. Here, NiS inclusions are the single, scientifically established mechanism that explains every one of the alternative factual predicates identified in the Complaint: glass that is too thin stresses around the inclusions; impurities in the melt directly introduce NiS; inadequate quality control fails to screen inclusions before tempering. These are not competing theories—they are contributing pathways to a single, identified failure mechanism. *Sweeny* is equally inapposite; that court dismissed allegations of "deficient materials" that were entirely conclusory and untethered to any physical process. Here, Plaintiffs have identified the material, the failure mechanism, the conditions of failure, and the historical pattern of identical failures in Honda's own product line. Moreover, unlike either *Wesley* or *Sweeny*, the product at issue is a federal-safety-regulated vehicle component, and

Honda is legally required under 49 U.S.C. § 30101 to track, monitor, and report precisely the kind of failure pattern alleged here.

Courts in this District have further held that the distinction between design defects and defects in materials or workmanship should not be resolved at the pleading stage when "sufficient facts are alleged to assert both." *Davis v. BMW of N. Am., LLC*, No. 2:20-cv-11876 (D.N.J. Oct. 26, 2022); *Gujral v. BMW of N. Am., LLC*, No. 2:19-cv-19650 (D.N.J. Oct. 26, 2022). "At the pleading stage, where the distinction is a matter of semantics and sufficient facts are alleged to assert both, the defendants' characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Davis*, *supra*. In *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856 (D.N.J. 2020), the court declined to dismiss express warranty claims where plaintiffs alleged defective windshields, finding that "courts have refused to apply a distinction between design and manufacturing defects at the pleadings stage when the distinction is a matter of semantics and sufficient facts are alleged to assert both." The same rule applies here. References to glass that was "too thin" or had "impurities/stresses" implicate manufacturing processes and material quality, not just design choices.

Rule 9(b)'s heightened specificity requirements must also be relaxed because the precise technical details of the defect are "peculiarly within the defendant's knowledge." *FDIC v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994). AHM controls all manufacturing records, quality control data, glass supplier specifications, tempering process parameters, and internal testing results. In *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373 (D.N.J. 2014), the court found that plaintiffs "adequately put the defendant on notice" where they claimed the defendant had "exclusive knowledge of the defect" based on pre-release testing, early consumer complaints, and internal data accessible only to the defendant. Requiring a consumer to identify the precise metallurgical or manufacturing failure mechanism before any discovery would be unjust and contrary to the purposes of the CFA.

Finally, the only court to adjudicate Honda's motion to dismiss on the identical defect theory—*Tappana v. American Honda Motor Co., Inc.*, No. 2:21-cv-09046 (C.D. Cal. July 5, 2022)—held that the plaintiffs "sufficiently pleaded the existence of a defect" by describing the use of tempered soda-lime glass and the propensity of such glass to spontaneously shatter, and specifically denied Honda's motion to dismiss for failure to allege a defect. AHM "cites no authority requiring Plaintiffs to make" comparative allegations about breakage rates.

## II. PLAINTIFFS ADEQUATELY ALLEGE AHM'S PRE-SALE KNOWLEDGE OF THE DEFECT

AHM argues that Plaintiffs cannot establish AHM's knowledge because they rely on an alleged internal service bulletin that AHM claims does not exist, unspecified NHTSA complaints, and a voluntarily dismissed class action involving different vehicles. Each argument fails independently, and the combination of the alleged sources creates an overwhelming inference of pre-sale knowledge that cannot be defeated on a motion to dismiss.

Courts in this District consistently recognize that NHTSA complaints may be used to show knowledge of a defect and that consumer complaints are routinely accepted as supporting the inference of pre-sale knowledge. In *Ludwig v. FCA US LLC*, No. 3:24-cv-08906 (D.N.J. Jan. 6, 2025), the court denied a motion to dismiss fraud-based claims after finding that a combination of internal investigations, TSBs, and NHTSA complaints adequately demonstrated the defendant's knowledge of a defect before the plaintiff's purchase. The court specifically held that "consumer complaints are routinely accepted as supporting the inference of presale knowledge and that NHTSA complaints may be used to show knowledge of a defect." Similarly, in *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 2:17-cv-12789 (D.N.J. Nov. 29, 2018), the

court found sufficient allegations of manufacturer knowledge based on claims that BMW monitored the NHTSA complaint log and became aware of numerous sunroof-related complaints before plaintiffs purchased their vehicles.

The temporal requirement for pre-sale knowledge fraud claims was addressed by the Third Circuit in *Diaz v. FCA US LLC*, No. 24-1197 (3d Cir. Apr. 15, 2025), which emphasized that multiple sources of pre-sale information may collectively establish knowledge. Here, NHTSA's investigation (EA14-002) documented over 4,000 complaints of spontaneous sunroof shattering, with Honda specifically included. Over 800 complaints of exploding sunroofs in Honda vehicles alone were reported to NHTSA dating back to 1995. AHM, as a regulated vehicle manufacturer, is required by the Safety Act to monitor consumer complaints and NHTSA data. These are not vague, anonymous references—they are specific complaints to a federal safety agency that Honda is legally obligated to monitor.

AHM dismisses the *Tappana* class action as involving "different vehicles" and notes it was voluntarily dismissed. Both objections fail. The *Tappana* complaint alleged the identical defect mechanism—spontaneous shattering of tempered glass sunroofs—in the same Honda and Acura product line spanning model years 2015-2022. The court in *Tappana* specifically found that the allegations of Honda's knowledge were sufficient to survive a motion to dismiss. That the defect manifested across multiple model years of the same product line strongly supports the inference that Honda had pre-sale knowledge when it sold the Freds' 2023 MDX. In *Cohen v. Subaru of Am., Inc.*, No. 2:18-cv-15261 (D.N.J. Sept. 8, 2022), the court held that "discovery was the appropriate mechanism for determining precisely when awareness of performance issues transformed into actual knowledge of the specific defect." The same principle applies here. Whether the same glass supplier, tempering process, and installation methods were used across model years—and what Honda knew about defect rates in prior years—are factual questions that require discovery, not grounds for dismissal.

AHM separately argues that the *Tappana* class action is irrelevant because it was voluntarily dismissed with prejudice in 2023. This argument conflates the litigation's ultimate resolution with its evidentiary significance on the knowledge element. Pre-sale knowledge is established at the time of the defendant's conduct, not retroactively altered by subsequent litigation outcomes. The *Tappana* complaint was filed in November 2021, alleging Honda's knowledge of the identical spontaneous glass-shattering defect in its sunroofs. That filing placed Honda on formal legal notice of the alleged defect pattern more than three years before the Freds' July 2025 incident. The dismissal with prejudice in 2023 does not erase the notice Honda received in 2021; it merely ended that particular proceeding. Courts uniformly recognize that prior litigation—including dismissed claims—may establish pre-sale knowledge. See *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 2:17-cv-12789 (D.N.J. Nov. 29, 2018). If anything, AHM's ability to obtain a dismissal with prejudice suggests it devoted substantial litigation resources to resolving those claims—precisely the kind of active engagement with the defect issue that demonstrates, rather than negates, corporate-level awareness.

AHM also relies on *Oliver v. Funai Corp.*, 2015 WL 9304541 (D.N.J. Dec. 21, 2015), for the proposition that anonymous complaints on third-party internet forums cannot impute knowledge. That case has no application here. NHTSA complaints are not anonymous internet posts—they are formal, named submissions to a federal safety agency that vehicle manufacturers are required by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 et seq., to actively monitor, investigate, and report upon. The statute imposes specific legal obligations on regulated manufacturers to identify safety-related defects in their vehicles. *Oliver* involved

consumer electronics complaints on unregulated third-party websites, with no legal obligation on the manufacturer to review or respond to them. AHM's statutory monitoring obligation fundamentally distinguishes this case from *Oliver* and transforms what would be anonymous noise in another context into constructive legal notice here.

As to the Pedersen Declaration claiming Honda "never issued" a bulletin "regarding the 2023 Acura MDX," this carefully worded denial creates a factual dispute that cannot be resolved on a motion to dismiss. It does not address TSBs issued for other model years sharing the same moonroof components, internal communications short of formal bulletins, or Honda's documented TSBs for moonroof seal deformation and noise issues on 2022-2025 MDX vehicles. This Court should not credit AHM's extrinsic evidence at the 12(b)(6) stage, as it converts the motion into one for summary judgment. *See Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). In *Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1531 (D.N.J. Jan. 24, 2014), Judge Walls held that plaintiffs sufficiently alleged manufacturer knowledge of a latent defect based in part on a TSB and consumer complaints, permitting the CFA claim to proceed.

AHM will likely cite *Schechter v. Hyundai Motor Am.*, No. 2:18-cv-10278 (D.N.J. Jan. 10, 2019), and *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94 (3d Cir. 2013), where knowledge allegations were found insufficient. Those cases are distinguishable. In *Schechter*, the plaintiff failed to allege that Hyundai monitored or tracked the NHTSA website or that NHTSA informed Hyundai about the complaints. In *Gotthelf*, there was "no indication that the manufacturer's internal testing or dealership repair orders put it on notice of the defect." Here, by contrast, Plaintiffs allege that AHM is required by federal law to monitor NHTSA complaints, that Honda was specifically included in the NHTSA investigation, that Honda had been sued in class action litigation alleging the identical defect, that Honda issued TSBs for moonroof issues in the MDX product line, and that Honda's own service manager confirmed the pattern of moonroof shattering reports. Whether AHM's Pedersen Declaration contradicts these allegations is a credibility determination for the jury after discovery, not the Court on a motion to dismiss.

### III. AHM HAD A DUTY TO DISCLOSE THE KNOWN SAFETY DEFECT

AHM argues it had no duty to disclose any alleged defect under New Jersey law because there was no special relationship between AHM and Plaintiffs and no partial disclosure triggering such a duty. This argument misstates the applicable legal standard and mischaracterizes the allegations in the Complaint.

While New Jersey courts have held that there is no blanket special relationship between individual consumers and automobile manufacturers, courts in this District have consistently recognized that a duty to disclose arises in specific circumstances. In *Amato v. Subaru of Am., Inc.*, No. 2:18-cv-15261 (D.N.J. Mar. 31, 2019), the court held that "affirmative misrepresentations and omissions by a vehicle manufacturer may be actionable when the manufacturer has exclusive or superior knowledge regarding the defect **or** if the defect relates to a safety concern, **or** when specific ambiguous partial disclosures have been made." This three-part disjunctive test is dispositive here. Plaintiffs need not establish all three elements; any one can suffice. Here, Plaintiffs satisfy all three.

First, AHM possessed exclusive superior knowledge of the defect. AHM controlled glass supplier specifications, tempering process parameters, quality control failure data, internal testing results, warranty claim patterns, and NHTSA complaint monitoring data—none of which was available to consumers. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373 (D.N.J. 2014) (finding knowledge allegations adequate where defendant had exclusive access to pre-release testing, early consumer complaints, and internal data).

Second, a spontaneously shattering moonroof that rains glass fragments into a moving vehicle cabin at highway speeds is unquestionably a safety concern. *Gray* held that allegations regarding convertible tops that could lead to damage or injury were sufficient to establish a safety issue supporting a consumer protection claim. A moonroof that can explosively shatter while driving poses a manifestly greater safety risk.

Third, AHM made affirmative partial disclosures about the quality, safety, and reliability of the Acura MDX through marketing, advertising, and the NVLW itself, which expressly promises to repair defects in "materials or workmanship." In *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, No. 2:20-cv-14464 (D.N.J. Nov. 19, 2021), the court recognized that "a plaintiff can assert an omission-based negligent misrepresentation claim in connection with a concealed defect when a manufacturer has made a partial disclosure." AHM's marketing of the MDX as a premium, safe luxury vehicle while concealing knowledge of a potentially lethal moonroof defect is precisely the type of deceptive omission that the CFA was designed to address.

Plaintiffs acknowledge that *Ludwig v. FCA US LLC*, *Cohen v. Subaru of Am., Inc.*, and *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578 (D.N.J. 2016), hold that safety alone does not create a duty to disclose. Plaintiffs do not argue otherwise. This case involves safety plus superior knowledge plus partial quality and safety representations—precisely the combination recognized in *Amato* as sufficient to create a duty to disclose. The New Jersey Supreme Court's decision in *Sun Chemical Corp. v. Fike Corp.*, 243 N.J. 319 (2020), confirmed that CFA omission-based claims may proceed alongside product liability claims. In *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526-27 (D.N.J. 2008), Judge Hochberg allowed CFA nondisclosure claims to survive where the manufacturer concealed a known vehicle defect, holding that plaintiffs adequately alleged superior knowledge even absent a fiduciary relationship.

AHM also cites *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307 (D.N.J. Mar. 10, 2022), and *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791 (D.N.J. Mar. 31, 2021), for the proposition that New Jersey courts dismiss CFA omission claims absent a fiduciary or special relationship. AHM omits that the *Cohen* court did not categorically reject duty-to-disclose claims—it dismissed that particular claim because the plaintiff failed to satisfy any prong of the *Amato* test on its facts. The windshield defect at issue in *Cohen* involved gradual degradation of wiper performance over time—a safety concern of a qualitatively different order than a moonroof that instantaneously and catastrophically detonates while driving at highway speed with no warning. The *In re Subaru Battery Drain* decision involved an electrical drain that reduced battery life—the court found no safety concern cognizable under *Amato*. A slowly dying battery that strands a commuter is categorically different from an explosive glass panel raining shards into an occupied cabin at speed. This Court should apply *Amato* as written: where safety, superior knowledge, and partial disclosure all exist, the duty to disclose is established, and *Cohen* and *In re Subaru Battery Drain* do not control.

AHM's reliance on *BCR Carp. LLC v. FCA US LLC*, No. 24-3202 (3d Cir. Oct. 3, 2025), is misplaced. That case involved an alleged markup embedded in a federally mandated "destination charge" under the Automobile Information Disclosure Act—a wholly different statutory context. The Third Circuit's holding that "no reasonable consumer would be surprised to learn that a 'charge' includes profit" has no application to a consumer's reasonable expectation that their vehicle's moonroof will not spontaneously explode. The *BCR Carp.* court was careful to cabin its holding to the specific regulatory context of the destination charge and did not purport to alter the principle that manufacturers may have a CFA duty to disclose known safety defects where superior knowledge and partial disclosures are involved.

### IV. THE EXPRESS WARRANTY CLAIM SURVIVES BOTH THE DESIGN/MANUFACTURING DISTINCTION AND THE MILEAGE LIMITATION

AHM argues that Plaintiffs' express warranty claim fails because the NVLW only covers defects in "material and workmanship," not design defects, and because the vehicle had over 61,000 miles at the time of the incident. Both arguments fail.

**A. The Complaint Alleges Manufacturing and Material Defects Covered by the NVLW**

The Third Circuit in *Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019), held that the NVLW's "materials or workmanship" language "unambiguously excludes design defects." The necessary corollary, however, is equally clear: the NVLW expressly covers defects in **materials**. NiS inclusions are manufacturing impurities that form during the glass production process and cause the glass to depart from its intended manufacturing specifications—they are the quintessential material defect, not a design choice. Under the Restatement (Third) of Torts: Products Liability § 2, a manufacturing defect exists "when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product." A moonroof with NiS inclusions has departed from intended specifications and is covered by the NVLW.

Courts in this District consistently refuse to resolve the design versus manufacturing distinction at the pleading stage. In *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 2:22-cv-00588 (D.N.J. Aug. 3, 2023), the court analyzed whether alleged seat defects were covered under a New Vehicle Limited Warranty, recognizing that this determination cannot be made pre-discovery. In *Amato v. Subaru of Am., Inc.*, No. 2:18-cv-15261 (D.N.J. Mar. 31, 2019), while the court recognized that design defects are generally excluded from NVLW coverage, that distinction applies only where the complaint clearly alleges only a design defect. The Complaint here alleges facts supporting both design and manufacturing defects—references to glass that was "too thin" or had "impurities/stresses" implicate manufacturing processes and material quality. In *Davis*, *Gujral*, *Powell*, and *Granillo*, courts in this District uniformly held that "where the distinction is a matter of semantics and sufficient facts are alleged to assert both, the defendant's characterization should not control whether the complaint survives."

**B. The Mileage Limitation Is Unconscionable**

Even accepting that the vehicle exceeded 50,000 miles, the mileage limitation on the NVLW is unconscionable and should not bar Plaintiffs' claim. The defect—NiS inclusions in the glass—was present at the moment of manufacture; it had simply not yet manifested. Glass experts confirm that NiS inclusions "can take weeks, months, or even years" to manifest. AHM had knowledge of the spontaneous shattering defect from years of NHTSA complaints, the *Tappana* litigation, TSBs for moonroof issues in the MDX line, and its own internal records. AHM structured its warranty period knowing that the defect might not manifest until after expiration, effectively immunizing itself from liability for a known safety hazard. The Freds had no ability to negotiate the warranty terms or to independently assess the risk of glass impurities—the warranty was adhesive.

While AHM will cite *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 (D.N.J. 2020), for the proposition that consumers must allege their vehicles were under the mileage limit when they sought repairs, *Ponzio* did not address situations where a defect existed during the warranty period but only manifested later, particularly in cases involving alleged concealment of known defects. That distinction is critical here.

As a threshold matter, this Court should not consider the Carfax report that AHM submits as Exhibit 1 to the Pedersen Declaration on this Rule 12(b)(6) motion. The Carfax report is an extrinsic document not incorporated by reference into or attached to the Complaint. While AHM asks the Court to take judicial notice of it as a public DMV record, mileage data reflected in a commercial Carfax report is not the kind of adjudicative fact whose accuracy "cannot reasonably be questioned" under Fed. R. Evid. 201(b). Carfax reports are compiled by a private commercial entity aggregating data from multiple state and private sources; their mileage readings reflect the odometer reading at the time a particular service record was generated, not the mileage at the time of the incident. Courts in this District have cautioned that converting a Rule 12(b)(6) motion into a review of extrinsic evidentiary materials improperly transforms the motion into one for summary judgment. *See Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). To the extent this Court considers mileage, the Complaint's own allegations control, and those allegations establish that the defect was latent and present from the moment of manufacture—irrespective of when it manifested. Even on AHM's own timeline, the vehicle was purchased new and driven within the warranty period for over three years before the defect manifested; whether the glass had NiS inclusions on the day of sale—which it did, if Plaintiffs' allegations are credited—is the legally operative question, not the odometer reading on the date of failure.

In *Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1531-WHW-CLW (D.N.J. Jan. 24, 2014), Judge Walls held that plaintiffs adequately pleaded that warranty mileage limitations were substantively unconscionable where they alleged the manufacturer knowingly placed vehicles containing the alleged defect into the stream of commerce, manipulated the warranty term to ensure the defect would not manifest until after expiration, and unconscionably marketed the product to uninformed consumers. The *Skeen* court allowed both express and implied warranty claims to proceed and ultimately certified a class on these claims. The New Jersey Supreme Court has long held that warranty limitations are "strictly construed against the seller." *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 373 (1960). Under N.J.S.A. 12A:2-719(3), limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable. *Collins v. Uniroyal, Inc.*, 64 N.J. 260 (1974).

## V.  THE IMPLIED WARRANTY CLAIM IS VIABLE DESPITE THE DURATIONAL LIMITATION AND CONTINUED VEHICLE USE

AHM argues that Plaintiffs' implied warranty claim fails because the warranty is limited to the same 4-year/50,000-mile duration as the express warranty, the vehicle was driven for over three years and 60,000 miles without issues, and continues to be driven. Both arguments fail.

### A. The Durational Limitation Is Unconscionable

While the Magnuson-Moss Warranty Act permits a warrantor to limit the duration of implied warranties to match the written warranty, 15 U.S.C. § 2308(a), such limitations are subject to New Jersey's unconscionability doctrine. In *Amato v. Subaru of Am., Inc.*, No. 2:18-cv-15261 (D.N.J. Mar. 31, 2019), the court recognized an important exception to the general rule that latent defects discovered after the warranty term are not actionable: "where the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may state a claim if they allege that the warranty was unconscionable."

The general baseline rule articulated in *In re Philips/Magnavox Television Litig.*, No. 2:08-cv-01970 (D.N.J. May 21, 2010)—that "time-limited warranties do not protect buyers against hidden defects that exist before but are typically not discovered until after the expiration of the warranty period"—does not apply where the plaintiff adequately alleges unconscionability based on the manufacturer's knowledge and concealment of the latent defect. As *Skeen* makes clear, that

bar is cleared at the pleading stage where the Complaint alleges that AHM knew of the latent NiS-inclusion defect, structured the warranty period to expire before the defect was statistically likely to manifest, and left consumers with no recourse for a known safety hazard.

In *Paolucci v. FCA US LLC*, No. 3:23-cv-14027 (D.N.J. Mar. 12, 2024), the court specifically considered "whether it would be unconscionable to limit the duration of the implied warranty to that of the express warranty when a latent defect caused system failure" and "whether equitable tolling could apply when a plaintiff discovers a defect only after the limitations period despite proper diligence." In *Ballou v. Bayerische Motoren Werke Aktiengesellschaft*, No. 2:20-cv-04817 (D.N.J. Nov. 16, 2023), the court similarly allowed an implied warranty claim to proceed where the plaintiff contended "the defect existed at the time of sale and the vehicle exhibited symptoms of impending failure during the express warranty period."

### B. Merchantability Requires Safe Transportation, Not Merely Basic Drivability

Under N.J.S.A. 12A:2-314, goods must be "fit for the ordinary purposes for which such goods are used." In *Rose v. Ferrari N. Am., Inc.*, No. 2:22-cv-07370 (D.N.J. Jan. 12, 2024), the court held that "a plaintiff adequately pleaded an implied warranty of merchantability claim by alleging that a brake defect placed vehicles at risk for unexpected and sudden failure, exposing drivers and passengers to unreasonable and substantial risk of injury or death." The court emphasized that "merchantability in the context of a car requires not just basic functionality but safe and reliable transportation" and that "a defect that can cause a car to cease proper functioning may breach the implied warranty of merchantability, even if the vehicle remains drivable in some capacity."

AHM's argument that the vehicle "continues to be driven" misses this point. The ordinary purpose of a vehicle is safe transportation. A vehicle whose moonroof can spontaneously explode, showering the cabin with broken glass while driving at highway speeds, is not fit for the ordinary purpose of safe transportation regardless of whether it continues to move from point A to point B. The Freds' continued use reflects economic necessity, not the absence of a safety defect. The *Tappana* court specifically rejected Honda's argument that continued use without incident demonstrates merchantability, allowing the implied warranty claims to proceed.

AHM relies specifically on *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721 (D.N.J. Dec. 29, 2011), *Sheris v. Nissan N. Am., Inc.*, 2008 WL 2354908 (D.N.J. June 2, 2008), *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756 (D.N.J. June 2, 2015), and *Brown v. Hyundai Motor Am.*, 2019 WL 4126710 (D.N.J. Aug. 30, 2019), for the proposition that years of driving without problems defeats the merchantability claim. Each of those cases is factually distinguishable on a critical dimension: in every one, the alleged defect caused the vehicle to malfunction in a way that left the vehicle still operational after the failure event, and the plaintiff's continued use reflected the absence of any acute safety risk. *Glass* involved gradual paint defects; *Sheris* involved a brake system that could be safely repaired and the vehicle returned to service; *Stevenson* involved an airbag defect that had not yet triggered; *Brown* involved an engine failure from which the vehicle was repaired and driven subsequently. None involved a component that had already catastrophically exploded. Here, the moonroof has already spontaneously detonated—this is not a latent risk that has not yet materialized, but an actual failure that has already occurred. That the vehicle can still move down the road without a functioning moonroof does not establish merchantability any more than the proposition that a vehicle with a shattered windshield is fit for its ordinary purpose because its engine still runs.

### VI.   THE NEGLIGENCE CLAIM ADEQUATELY ALLEGES BOTH DEFECT CAUSATION AND COGNIZABLE INJURY

AHM argues that the negligence claim fails under Delaware law because Plaintiffs do not identify the specific cause of the defect and because Delaware law requires physical injury for emotional distress damages in negligence claims. Both arguments fail.

### A. Defect Causation Is Adequately Alleged

Delaware law does not require plaintiffs to identify the specific technical cause of a defect at the pleading stage—only the general nature of the defect and a plausible connection to the harm. Plaintiffs' identification of the defect—spontaneous glass shattering caused by manufacturing impurities and inadequate quality control in the tempering process—is sufficient under the indeterminate product defect test adopted by the New Jersey Supreme Court in *Myrlak v. Port Authority of New York and New Jersey*, 157 N.J. 84, 723 A.2d 45 (1999). This test, drawn from Restatement (Third) of Torts: Products Liability § 3, permits the inference of a defect where the incident "was of a kind that ordinarily occurs as a result of product defect" and "was not, in the particular case, solely the result of causes other than product defect."

The Third Circuit has recognized and applied this test. *See Kuhar v. Petzl Co.*, No. 19-3900 (3d Cir. Apr. 13, 2022). A moonroof that spontaneously and explosively shatters while driving—without any external impact—is precisely the type of product malfunction from which a defect may be inferred. Moonroofs do not explode absent a defect.

### B. The Complaint Alleges Cognizable Injury and Risk of Physical Harm

AHM argues that Delaware law requires physical injury for emotional distress damages in negligence claims. While that standard may govern emotional distress damages specifically, Plaintiffs' negligence claim is not premised solely on emotional distress—it alleges a dangerous defect that created a substantial risk of physical harm.

In *Cohen v. Subaru of Am., Inc.*, No. 2:18-cv-15261 (D.N.J. Sept. 8, 2022), addressing the economic loss rule's public safety exception, the court held that "allegations of some risk of physical injury, where it was reasonable to infer that potential injuries could be severe, were sufficient to satisfy the risk and severity of injury elements at the pleading stage," even though "the complaint did not identify any actual physical injuries resulting from the defect." Allegations that consumers experienced near-misses due to a vehicle malfunction were sufficient despite no actual injuries occurring. In *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. No. II*, No. 2:03-cv-00302 (D.N.J. June 27, 2008), the court found that plaintiffs asserting "the vehicle was presently defective and that such defect currently created a potential safety hazard" had alleged sufficient damages to survive dismissal.

An explosive glass shattering in a moving vehicle at highway speeds creates a substantial risk of lacerations, inhalation of glass particles, physical contact with debris, driver distraction, and loss of vehicle control. The Complaint should be read in the light most favorable to Plaintiffs, and a reasonable inference exists that such explosive shattering involves physical contact with glass debris and risk of severe physical injury. In *Booker v. New Jersey*, No. 3:05-cv-00616 (D.N.J. Mar. 1, 2006), the court dismissed a claim only where the plaintiff alleged "only emotional and psychological harm, embarrassment and humiliation" and admitted "not suffering physical or emotional harm requiring medical treatment." That is not this case. Moreover, the economic loss doctrine under *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194 (Del. 1992), does not bar claims where personal injury or damage to other property is alleged, and glass shards that damaged the vehicle interior constitute damage to property other than the moonroof itself, satisfying the other-property exception.

### VII. THE NIED CLAIM SATISFIES NEW JERSEY'S REQUIREMENTS AS TO STEVEN FRED

AHM argues that the NIED claim fails because Plaintiffs do not plausibly allege negligence, do not allege any physical consequences resulting from emotional distress, and Vanessa Fred was not present during the incident and was not in the zone of danger.

As established in Point VI above, negligence is adequately pleaded. The NIED claim is viable as to Steven Fred under the zone of danger theory. Under New Jersey law, NIED claims may proceed under the zone of danger theory where "the plaintiff is located within a zone of risk created by the defendant's negligent conduct." *Raab v. City of Ocean City*, No. 1:13-cv-04496 (D.N.J. Aug. 12, 2014); *Amentler v. 69 Main Street, LLC*, No. 3:11-cv-02368 (D.N.J. May 24, 2012). Critically, courts in this District recognize that "both recognized theories of NIED contemplate the absence of direct physical injury"—that is, NIED is available precisely where emotional distress occurs without severe physical trauma. *Worster v. Tropicana Entm't, Inc.*, No. 3:13-cv-06879 (D.N.J. Nov. 18, 2016); *Sims v. Tropicana Entm't, Inc.*, No. 3:14-cv-07617 (D.N.J. Oct. 13, 2016).

Steven Fred was inside the vehicle when the moonroof exploded directly above him—he was unquestionably within the zone of danger. The explosive shattering of glass overhead while driving at speed, combined with the physical shower of glass fragments, constitutes emotional distress arising from fear of imminent bodily harm directly within the zone of risk. In *Collick v. William Paterson Univ.*, No. 2:15-cv-06038 (D.N.J. Aug. 26, 2016), the court dismissed a claim only because the complaint failed to allege observation of death or serious physical injury—elements of the bystander liability theory, not the zone of danger theory at issue here. Steven Fred proceeds under the zone of danger theory as the person directly endangered.

As to Vanessa Fred, Plaintiffs acknowledge that she was not present in the vehicle at the time of the incident. Under the zone of danger theory, she was not within the zone of risk, and the bystander liability theory requires observation of death or serious injury to a close family member, which is not alleged. *Amentler* recognized that a basic negligence claim resulting in emotional distress may proceed where a plaintiff suffers emotional harm as a result of physical contact, and additional factual development through discovery is needed to assess whether Vanessa Fred's circumstances give rise to a cognizable NIED claim. To the extent the Court finds this claim deficient as to Vanessa Fred, Plaintiffs respectfully request leave to amend once discovery clarifies the relevant facts.

### VIII. THE IIED CLAIM ADEQUATELY ALLEGES EXTREME AND OUTRAGEOUS CONDUCT AND SEVERE EMOTIONAL DISTRESS

AHM argues that the IIED claim fails because the Complaint does not plausibly allege extreme and outrageous conduct or severe emotional distress, relies on a supposedly non-existent service bulletin and unidentified complaints, and is undermined by the Freds' continued use of the vehicle.

To establish IIED under New Jersey law, a plaintiff must show intentional or reckless action with intent to produce emotional distress, extreme and outrageous conduct, proximate causation, and emotional distress so severe that no reasonable person could be expected to endure it. *Jackson v. Paterson Police Dep't*, 804 F. Supp. 3d 469 (D.N.J. 2025); *Witherspoon v. Rent-A-Ctr., Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001); *Smith v. Exxon Mobil Corp.*, 374 F. Supp. 2d 406 (D.N.J. 2005). The defendant's conduct must be "so outrageous in character and extreme in degree as to go beyond all bounds of decency." *Smith*, 374 F. Supp. 2d at 426.

The Third Circuit in *Heywood v. Cruzan Motors, Inc.*, 792 F.2d 367 (3d Cir. 1986), found that a dealership failing to honor warranty terms or treat a buyer professionally did not rise to the level of outrageousness required for IIED. That case establishes the floor—routine warranty disputes do not suffice. This case is far from routine. The Complaint alleges that AHM knew for decades about a dangerous propensity of its sunroofs to spontaneously explode—documented in thousands of NHTSA complaints, subjected to federal investigation, and litigated in multiple class actions—yet continued to sell vehicles with the same tempered glass without disclosure or remedy, and then systematically refused warranty coverage by falsely attributing spontaneous failures to external impacts, a pattern documented in the *Tappana* litigation. If proven, a manufacturer's deliberate concealment of a safety defect that could cause catastrophic failure while driving, followed by systematic denial of responsibility, could constitute extreme and outrageous conduct. In *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373 (D.N.J. 2014), the court found that allegations regarding defective convertible tops that could lead to damage or injury were sufficient to support consumer protection claims. A multi-decade pattern of concealing an explosive moonroof defect presents a considerably stronger basis for finding extreme and outrageous conduct.

AHM's argument that the Freds' continued use of the vehicle negates severe emotional distress also fails. Economic necessity may require continued use despite emotional harm. *Witherspoon*, 173 F. Supp. 2d at 243. Many consumers cannot afford to abandon their primary means of transportation despite a known safety risk, particularly when the manufacturer has refused warranty coverage and denied responsibility. Whether the distress alleged rises to the level of severity required—"so severe that no reasonable person could be expected to endure it"—is a factual question for the jury after discovery, not a basis for dismissal at the pleading stage. The IIED allegations do not rest on a single internal service bulletin; as established in Point II above, they are grounded in multiple independent sources of evidence, each of which is cognizable under this District's law.

## IX. THE MMWA CLAIM AND PUNITIVE DAMAGES ARE ADEQUATELY PLEADED

AHM argues that the MMWA claim fails because it is derivative of the state law warranty claims, which should be dismissed, and that the punitive damages claim lacks factual support for malicious or willful misconduct.

### A. The MMWA Claim Survives Because the State Warranty Claims Survive

Cases in this District consistently hold that MMWA claims stand or fall with express and implied warranty claims under state law and that to state a claim under the MMWA, a plaintiff must first adequately plead a claim for breach of warranty under state law. *Neuss v. Rubi Rose, LLC*, No. 1:16-cv-05617 (D.N.J. Aug. 31, 2017); *Russo v. Thor Indus., Inc.*, No. 1:18-cv-12698 (D.N.J. June 30, 2020); *Bullard v. Jaguar Land Rover Auto. PLC*, No. 2:22-cv-00660 (D.N.J. Mar. 16, 2023). The Third Circuit has recognized that MMWA claims are derivative of state warranty claims. *Block v. Jaguar Land Rover N. Am., LLC*, No. 22-1544, at *7 (3d Cir. June 1, 2023). As demonstrated in Points IV and V above, the express and implied warranty claims are viable. Accordingly, the derivative MMWA claim under 15 U.S.C. § 2310(d) survives as well. Additionally, under 15 U.S.C. § 2308(a), a warrantor who provides a written warranty on a consumer product may not disclaim or modify any implied warranty. While a warrantor may limit the duration of implied warranties, such limitations must not be unconscionable, as argued above.

### B. Punitive Damages Are Adequately Pleaded

Under N.J.S.A. 2A:15-5.9, punitive damages require acts or omissions that were "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed." The Complaint alleges that AHM knew of the moonroof defect through decades of NHTSA complaints, federal investigations, class action litigation, internal testing, and dealer reports, yet continued to sell vehicles with the same defective glass without disclosure, warning, or remedy, and compounded the harm by routinely denying warranty claims and falsely attributing spontaneous shattering to external impacts.

Courts in this District recognize that punitive damages claims may proceed where a manufacturer knowingly sells a product with a known, undisclosed safety defect. *See Skeen v. BMW of N. Am., LLC*, No. 2:13-cv-1531 (D.N.J.) (allowing case to proceed through class certification on claims that manufacturer knowingly sold vehicles with a latent defect and manipulated warranty terms). Whether AHM's conduct rises to the level of wanton and willful disregard requires discovery into AHM's internal documents, testing records, and decision-making processes. Dismissing the punitive damages claim before any such discovery would deprive Plaintiffs of the opportunity to prove what AHM knew and when—precisely the type of information peculiarly within the defendant's knowledge that justifies retaining the claim through the pleading stage.

## X. EQUITABLE AND INJUNCTIVE RELIEF IS APPROPRIATE AND PLAINTIFFS HAVE STANDING

AHM argues that Plaintiffs' request for equitable and injunctive relief is improper because they have not alleged the lack of an adequate remedy at law and lack standing to seek relief on behalf of non-parties.

At the pleading stage, Plaintiffs need not prove that legal remedies are inadequate—they need only state a plausible claim that equitable relief is necessary. In *Snowdy v. Mercedes-Benz USA, LLC*, No. 2:23-cv-04054 (D.N.J. Feb. 29, 2024), the court rejected arguments that plaintiffs lacked standing to seek injunctive relief, finding that "continued ownership of vehicles with alleged defects constitutes continuing, present adverse effects permitting plaintiffs to seek such relief." The court determined that "plaintiffs plausibly alleged an irreparable injury that could not be adequately remedied through monetary damages alone, as defendants failed to explain how monetary damages would adequately remedy the harm in a manner equivalent to the requested injunctive relief."

In *Hardy v. Volkswagen Grp. of Am., Inc.*, No. 2:23-cv-04054 (D.N.J. Feb. 26, 2025), the court found that plaintiffs had adequately alleged standing to seek injunctive relief with respect to requests to compel defendants to offer remediation solutions, provide replacement components without defects, and reform warranties to cover alleged injuries. The court declined to resolve these factual questions at the pleading stage, finding that if plaintiffs were correct that recalls were insufficient to remedy the damages alleged, they would likely continue to be injured by the alleged defects absent injunctive relief.

Here, given that AHM has systematically denied warranty coverage and refused to acknowledge the defect, equitable relief is necessary to compel disclosure of the defect to current owners, repair or replacement of defective moonroofs, and extension of warranty coverage for this safety-critical latent defect. Monetary damages cannot adequately address the ongoing safety risk—the Freds need the defect remedied, not just compensation after the next explosive failure.

AHM's argument conflates Plaintiffs' request for injunctive relief with a request for a court-ordered recall. Plaintiffs' request includes disclosure obligations, repair or replacement of their own moonroof, and extension of warranty coverage—forms of relief that do not implicate NHTSA's exclusive recall authority under the FMVSA. Courts retain equitable authority to order disclosure, warnings, repairs, and warranty extensions that do not constitute formal recalls. The *Tappana* court expressly declined to dismiss Honda's equitable relief claims at the motion to dismiss stage. The *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC* settlement in this District ultimately provided exactly the type of extended warranty relief Plaintiffs seek here, demonstrating that such relief is both practical and precedented.

AHM's Article III standing and FMVSA preemption arguments raise legal questions better addressed at a later stage when the factual record is more developed and the precise scope of relief is defined. To the extent the Court finds the equitable relief request overbroad with respect to non-parties, Plaintiffs respectfully request leave to narrow the scope of the requested relief through amendment, focusing on relief for Plaintiffs themselves.

**LEAVE TO AMEND**

In the event this Court finds any claim deficient, Plaintiffs respectfully request leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely give[n] when justice so requires." This is AHM's first dispositive motion, and no previous amendment has been sought. Dismissal with prejudice—as AHM requests in its Proposed Order—is inappropriate where any deficiencies could be cured by amendment. Should the Court find the defect identification insufficiently specific, Plaintiffs can add further technical detail. Should the Court find the knowledge allegations insufficiently detailed, Plaintiffs can add specific NHTSA complaint numbers and dates obtainable through FOIA requests. Should the Court find the NIED claim as to Vanessa Fred insufficiently supported, Plaintiffs can seek leave to amend once discovery clarifies her circumstances or drop that claim. Should the Court find the injunctive relief request overbroad, Plaintiffs can narrow its scope. In each instance, amendment would cure any deficiency without prejudice to AHM's ability to defend on the merits.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant American Honda Motor Co., Inc.'s Motion to Dismiss in its entirety. The Complaint, construed in the light most favorable to Plaintiffs, states plausible claims for relief on all counts—from the CFA omission claim grounded in this District's established duty-to-disclose doctrine, to the express and implied warranty claims that survive the design/manufacturing distinction and the unconscionable mileage limitation, to the tort and emotional distress claims rooted in the zone of danger doctrine and the extreme and outrageous conduct of concealing a known catastrophic safety defect, to the MMWA and punitive damages claims supported by AHM's knowing pattern of concealment and warranty denial. Each of AHM's ten arguments fails on the law as courts in the Third Circuit and this District have articulated it. In the alternative, Plaintiffs request leave to amend any claims the Court finds deficient.

Dated: Brooklyn, New York
March 3, 2026

/s/Tyrone A. Blackburn, Esq.
Tyrone A. Blackburn, Esq.
Attorney for Plaintiff's
1242 E. 80th Street, 3rd Floor
Brooklyn, New York 11236
Telephone: (347) 342-7432